UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MONIQUE R. SMILEY,[1]

                Plaintiff,

   v.                                    DECISION AND ORDER
                                                   14-CV-266S

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

      1.      Plaintiff Monique R. Smiley challenges an Administrative Law Judge's ("ALJ") determination, dated June 28, 2012, that she is not disabled as defined by the Social Security Act ("the Act"). Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income benefits ("SSI") benefits on December 27, 2010, based on an inability to work due to lupus, rheumatoid arthritis, high blood pressure, depression, carpal tunnel syndrome, back pain, and irritable bowel syndrome. (R. 183, 193). Plaintiff alleges that she became disabled on June 15, 2009. In her *pro se* preprinted complaint, Plaintiff contends that the ALJ's determination was not based upon substantial evidence and/or contrary to law.[2]

      2.      Plaintiff's applications for DIB and SSI were initially denied. At Plaintiff's request, an administrative hearing was held before the ALJ on June 12, 2012. Plaintiff appeared with counsel at the hearing where Plaintiff and a vocational expert both testified. On June 28, 2012, the ALJ issued an opinion finding that Plaintiff was not

---

[1] NOTE PRO SE PLAINTIFF gave a new address on her 11/3/14 response/reply (DN 13): 245 Palmdale Drive, Apt. 2; Williamsville, NY 14221; (716) 444-2510. The old address is still listed under the party information on CM/ECF.
[2] Plaintiff was represented by counsel during the hearing and the administrative appeal.

1

disabled.  On September 20, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.

3.  Plaintiff, now proceeding *pro se*, filed the current civil action on April 11, 2014, challenging the Commissioner's final decision as erroneous and not supported by either substantial evidence or the applicable law.  On September 18, 2014, the Commissioner filed a Motion for Judgment on the Pleadings (Docket No. 11), pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  This Court finds the matter fully briefed and oral argument unnecessary.  Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings.  Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).  For the reasons discussed below, the Commissioner's motion is denied.

4.  A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is evidence that amounts to "more than a mere scintilla," and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation,

the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984). Yet, "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107

S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

4

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff had not engaged in substantial gainful activity since June 15, 2009, the onset date of her alleged disability (R. 22)[3]; (2) Plaintiff had the following "severe" impairments, within the meaning of the Act: hypertension and chronic fatigue syndrome (R. 23) (20 CFR 404.1520(c) and 416.920(c)); (3) neither these impairments nor any combination thereof meet or medically equal a recognized disabling impairment under Appendix 1 of the regulations, 20 CFR Part 404, Subpart P. Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.92(6) (R. 24); (4) Plaintiff had the residual functional capacity ("RFC") to perform a range of light work, with the limitation of a sit/stand option every thirty minutes (R. 28),[4] and (5) although Plaintiff was unable to perform her past relevant work as a gear-cutting machine operator, medical records clerk, or phlebotomist (R. 34), she had the capacity to perform other unskilled, light jobs, such as cashier or bench assembler, with the noted restrictions. (R. 36).

10. The Commissioner moves for judgment on the pleadings, affirming the denial of Plaintiff's benefits on the grounds that substantial evidence supports the Commissioner's decision. (Docket No. 11). Plaintiff did not file a cross motion for judgment on the pleadings, nor does she raise specific challenges to the ALJ's determination.[5] Thus, the Court takes particular notice of the sufficiency of the ALJ's

---

[3] Citations to the administrative record are designated as "R." In support of the Motion for Judgment on the Pleadings (Docket No. 11), the Commissioner submitted a supporting Memorandum of Law (Docket No. 11-1), Plaintiff responded *pro se* with a letter (Docket No. 13), and the Commissioner filed a Reply Memorandum of Law (Docket No. 14).
[4] Light work includes (1) lifting no more than 20 pounds at a time, (2) limiting the ability to reach in all directions or pull with his upper extremities, and (3) no crawling or working in areas where Plaintiff would be exposed to cold. (R. 14).
[5] The Docket contains various filings from Plaintiff containing medical records, some are duplicates and some are dated after the hearing. Attached to her Complaint is a letter from Dr. Karaszewski, dated December 9, 2013, indicating that she has a diagnosis of fibromyalgia. (Docket No. 1, p. 6).

credibility analysis, RFC determination, and inconsistencies in certain treatment notes, in finding that legal errors in the ALJ's opinion warrant remand for further review.

11.     At each step of the sequential evaluation process, the regulations require the ALJ to consider the claimant's subjective complaints about her symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness."  20 C.F.R. § 404.1529(b),. 20 C.F.R. § 404.1529(d).  The record reflects that Plaintiff alleges a number of conditions contributing to her disability, and that at least one treating physician acknowledged difficulty in finding a diagnosis to explain her various symptoms.  Consistent with Plaintiff's complaints of fatigue and pain, the ALJ adopted a statement by Plaintiff's rheumatologist, Dr. Dhillon, relaying a possible diagnosis of chronic fatigue syndrome (CFS) (as opposed to lupus), which the ALJ determined to be a "severe impairment" under the Act.  (R. 23, 327).  The ALJ considered Social Security Ruling 99-2 pertaining to evaluation of CFS cases, and noted a considerable overlap in symptoms with fibromyalgia.  (R. 23).  He also raised the salient issue that although CFS and fibromyalgia can be diagnosed solely by a patient's subjective complaints, the Regulations require objective findings to support a disability determination.  (R. 23).  As this Court has stated, "because the methods for diagnosing chronic fatigue syndrome are limited, the credibility of the claimant's testimony regarding her symptoms takes on 'substantially increased' significance in the ALJ's evaluation of the evidence." Fragale v. Chater, 916 F. Supp. 249, 254 (W.D.N.Y. 1996) (citing Reed v. Sec'y of Health & Human Servs., 804 F.Supp. 914, 918 (E.D.Mich. 1992).  Accordingly, "when presented with documented allegations of symptoms which are 'entirely consistent with the

symptomology' for evaluating CFS, … the Secretary cannot rely on the ALJ's rejection of the claimant's testimony based on the mere absence of objective evidence." Id.

Nevertheless, here, the ALJ largely discounted Plaintiff's allegations of daily pain, stiffness, and extreme need to rest based on lack of objective medical evidence to support her complaints. The ALJ found that despite Plaintiff's "assertions to the contrary, the medical record does not support that [her] impairments are as severe as she contends." (R. 28). And further that "diagnostic studies clearly demonstrate that the impairments are not as severe as alleged … nor do they record physiologic abnormalities of a kind and level" to support Plaintiff's complaints. (Id.).

The ALJ relied on various benign examination findings, including that Plaintiff's joints were normal and not swollen, and she had normal range of motion in her extremities (See ALJ's decision at, e.g., R. 28, citing R. 417; R. 29, citing R. 304; R. 30, citing R. 326-327). As support for the finding that Plaintiff's alleged Lupus and Rheumatoid Arthritis were not severe impairments for lack of objective findings, this evidence is substantial. As support for the credibility conclusion that Plaintiff's symptoms were not as severe as purported, however, this evidence is uninformative in light of Plaintiff's CFS impairment. Moreover, this Court has the benefit of hindsight and a more recent fibromyalgia diagnosis, attached to Plaintiff's complaint, which could support the reliability of her allegations. (Docket No. 1, p.6); see Green-Younger v. Barnhart, 335 F.3d 99, 108-09 (2d Cir. 2003) ("we have recognized that in stark contrast to the unremitting pain of which [fibromyalgia] patients complain, physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions")(citations and internal quotations

omitted); Fragale, 916 F. Supp. at 254 (chronic fatigue syndrome not inconsistent with a fibromyalgia diagnosis).

Generally, it is the ALJ's duty, and not the Court's, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant," Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir.2002). Indeed, the Court acknowledges that the ALJ's determination related to the severity of Plaintiff's high blood pressure is based on substantial evidence. The medical record supports that Plaintiff's blood pressure was "well controlled" with medication, and that Plaintiff's testimony that it was "always high", is contradicted by consistent in-office readings within the normal range. (R. 32-33). On the other hand, having also determined CFS to be a severe impairment, i.e. one that "imposes significant restrictions in the ability to perform basic work activities" (R. 22), the ALJ should not have given such weight to the lack of physical findings to undermine Plaintiff's credibility. See Fragale, 916 F.Supp. at 254-255; Green-Younger, 335 F.3d at 108; see also Rose v. Shalala, 34 F.3d 13, 17, 19 (1st Cir. 1994) ("Given the uncontroverted medical evidence that claimant suffered from CFS, however, blind reliance on a lack of objective findings is wholly inconsistent with the Secretary's policy…."); but see Squires v. Colvin, No. 13-CV-861S, 2014 WL 4269054, at *5 (W.D.N.Y. Aug. 29, 2014) (finding that despite Plaintiff's complaints of fatigue in the record, absent a medical diagnosis, "the only determination to be made was one of credibility").

12. In addition, to the extent the ALJ relied on inconsistencies in treatment notes from Plaintiff's primary care physician, Dr. Karaszewski, to discredit Plaintiff's allegations, his analysis appears flawed. The Court finds that those notes in particular

8

are somewhat uninformative, internally contradictory, and primarily related to visits for Plaintiff's hypertension.  For example, the ALJ relied on a treatment note dated March 21, 2011, a visit for a "recheck of hypertension" (R.367), stating that "Dr. Karaszewski again cited Ms. Smiley with similar denials of symptoms as mentioned in earlier records and reported mostly the same findings" as in previous examinations.  (R. 31).  The ALJ noted that while Plaintiff "denied leg swelling, this record still contained an assessment of swelling of limbs and the doctor recommended elevation of legs and decreased salt intake."  (R. 31).  Independent review of the record reveals that the note also states that Plaintiff "denies angina, arrhythmia, chest discomfort, pressure …", yet in the assessment section Patient is referred to a Dr. Matthews for "Pain Chest Unspec."  (R. 367-368).  Similarly, the note indicates that Plaintiff denies insomnia, yet insomnia is noted in the assessment section, and Dr. Karaszewski prescribed a new medication, Zolpidem Tartrate, for the condition.  (R. 368).  The Court finds analogous inconsistencies in other notes, including September 3, 2010 (R. 334; "denied" leg swelling, but diagnosed with Swelling of Limb and prescribed pain medication) and January 24, 2012 (R. 383; "denied" depression, but diagnosed with Depressive Disorder and prescribed medication).  Moreover, it is clear from the record that rheumatologists Dr. Michalski and Dr. Dhillon informed Dr. Karaszewski that Plaintiff was receiving treatment from and taking medication prescribed by those providers for her lupus-type symptoms.  (See, e.g., R. 417, 304; R. 326, 397).  No conclusions can be drawn about whether Dr. Karaszewski's notes stating Plaintiff "denied" various alleged symptoms are based on lack of findings and complaints, based on lack of relevance to her hypertension visits, or because treatment for her difficult to diagnose symptoms was

being handled by a rheumatologist.  The Court finds that, rather than undercutting Plaintiff's subjective complaints of pain and fatigue, these ambiguous treatment notes create a gap in the record, which the ALJ did not attempt to clarify.  See Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

13.   The ALJ determined that Plaintiff had the RFC to "perform the exertional demands of a full range of light work except for having a sit/stand option every thirty minutes."  (R. 28).  He based this determination on "the totality of the record," including Plaintiff's "statements and testimony about her ability to perform activities of daily living," medical opinions of Plaintiff's treating physicians, and an assessment by the State Agency medical consultant. (R. 28).

An individual's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 SSR LEXIS 5 at *5, 1996 WL 374184, at *2 (July 2, 1996)).  In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  Pardee v. Astrue, 631 F.Supp.2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms."  Stanton v. Astrue, No. 07–CV–803, 2009 U.S. Dist. LEXIS 130826, 2009 WL 1940539, *9 (N.D.N.Y. June 4, 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), aff'd, 370 Fed. Appx. 231 (2d Cir. 2010).

14.     Initially, a plaintiff "'need not be an invalid to be found disabled' under the Social Security Act." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (quoting Williams v. Bowen, 859 F.2d 255, 260 (2d Cir. 1988). Plaintiff's statements that she tends to her own personal hygiene, prepares meals three to four times a week, goes food shopping once or twice a month, and attends her children's school activities about four times per month, hardly undermine her testimony that she lies in bed most of the time, takes multiple hot baths daily to relieve her pain. (R. 207). In fact, she reported that after going shopping it takes her a day or two to recover. (R. 201, 206).

15.     The ALJ also gave "great weight" to the opinion of a non-examining State agency medical consultant in both discrediting Plaintiff's allegations and assessing her RFC. (R. 31). The medical consultant reviewed Plaintiff's records on March 11, 2011, and found that there was no evidence of joint abnormalities or current lupus flare. (R. 338). The consultant also noted that Plaintiff "complains mainly of fatigue," and that she "drives and takes care of her personal hygiene." (Id.). From this, he concluded that Plaintiff "should be able to walk 6 hrs. and to lift 20 lbs. occ[asionally], 10 lbs. freq[uently]/8 hour workday with environmental restrictions." (R. 338). As discussed above, discrediting Plaintiff's subjective complaints of pain and fatigue based on lack of objective supporting evidence is particularly contrary to medical and legal standards when considering CFS. See Fragale, 916 F.Supp. at 254-255; see also Hallgring v. Callahan, 975 F. Supp. 84, 91-92 (D.Mass. 1997) (contrary opinion of non-examining source was not entitled to much weight because "[t]he subjective severity of a claimant's fatigue associated with CFS is not something readily evaluated on an algid administrative record")(quoting Rose, 34 F.3d at 19).

11

16. In support of his analysis, the ALJ also noted that the record contains no medical opinions indicating Plaintiff's exertional functional capacity is lower than the RFC, and that none of her doctors stated that Plaintiff was disabled or totally incapacitated. (R. 32). While accurate, the Court finds that the record "contains neither a physical RFC assessment nor a medical source statement pertaining to Plaintiff's physical capabilities, let alone one from a treating source. When critical record voids exist, an ALJ is duty bound to take measures to complete the record and fill the perceived gaps." Lawton v. Astrue, No. 108-CV-0137 LEK/DEP, 2009 WL 2867905, at *16 (N.D.N.Y. Sept. 2, 2009) (finding "no basis upon which the court can find that substantial evidence supports the ALJ's light work RFC determination") (citing Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996); Echevarria v. Sec'y of Health and Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)). None of Plaintiff's physicians addressed her limitations, or lack of limitations, due to pain and fatigue, nor is there evidence that the ALJ requested a functional assessment. See Rosa v. Callahan, 168 F.3d 72, 81 (2d Cir. 1999) (ALJ's conclusion flawed where medical reports were consistent with Plaintiff's RFC "only to the extent that they were silent on the issue"). The Court likewise acknowledges that no physician suggested Plaintiff was disabled; however, this justification is unpersuasive, because it is likely that the ALJ would not have given much weight to such statement, had one appeared in the record, as that is a determination reserved for the Commissioner. Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999); 20 C.F.R. § 404.1527(e)(1).

17. Given the non-adversarial nature of the disability proceedings, the Court finds that the inconsistent and undetailed treatment notes, in addition to the general

silence regarding Plaintiff's work-related abilities create a gap, which the ALJ failed to fill. Shaw, 221 F.3d at 131. While it is possible that substantial evidence supports the finding of non-disability, because of the nature of this Plaintiff's "severe" condition, and because of ambiguities in the record, the Court finds that the Plaintiff did not have the benefit of her case being adjudicated according to the correct legal standards. Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998). Nowhere is it apparent that the ALJ asked for clarification, and because he specifically rejected Plaintiff's complaints for lack of objective clinical findings, the Court finds an error of law and will remand the decision for clarification of the record and corresponding credibility analysis.

18.   After carefully examining the record, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this decision. Defendant's Motion for Judgment on the Pleadings is therefore denied.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this Decision and Order.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated: October 8, 2015
Buffalo, New York

                                                /s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                           United States District Judge